UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. No. 11-CV-10460-TSH

GRAPHIC ARTS MUTUAL INSURANCE CO.,
UTICA MUTUAL INSURANCE CO., and
REPUBLIC FRANKLIN INSURANCE CO.,

*Plaintiffs*,

v.

D.N. LUKENS, INC.,

*Defendant*,

and

ARROWOOD INDEMNITY COMPANY,
AMERICAN INTERNATIONAL PACIFIC
INSURANCE COMPANY, and
GRANITE STATE INSURANCE COMPANY,

*Nominal Defendants/Interested Parties*.

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Graphic Arts Mutual Insurance Co., Utica Mutual Insurance Co., and Republic Franklin Insurance Co. (jointly, "Utica") submit this supplemental memorandum in further support of their motion for summary judgment.

On May 22, 2013, the Massachusetts Appeals Court issued the decision New England Insulation Co., Inc. v. Liberty Mutual Ins. Co., 83 Mass. App. Ct. 631 (2013). A copy New England Insulation is attached hereto at Tab 1. New England Insulation is relevant to Utica's motion for summary judgment in the following respects.

(1) New England Insulation confirms that the time-on-the-risk allocation method adopted by the Supreme Judicial Court in Boston Gas Co. v. Century Indem. Co., 454 Mass. 337 (2009) applies to asbestos-related progressive injuries, such as that alleged in all but one of the underlying cases brought against Utica's insured D.N. Lukens, Inc. ("Lukens"). See New England Insulation, 83 Mass. App. Ct. at *4 ("NEIC offers no persuasive reason why the pro rata method articulated in Boston Gas should not control here.").

(2) New England Insulation implicitly confirms that an insurer does not violate G.L. c. 93A by adjusting its position in response to Boston Gas and insisting that its insured contribute to indemnity payments. In New England Insulation, an insurer terminated its participation in a cost-sharing agreement after Boston Gas was decided, and thereafter insisted that the insured contribute to any indemnity payments made on its behalf. Id. at *2. Because the insured did not assert a chapter 93A claim against its insurer, the Court did not have cause to rule whether such action may constitute a 93A claim. See id. at *1 n.2. The utter absence of any criticism in the Court's description of the insurer's actions, however, implicitly supports Utica's position - *i.e.*, it is not unfair or deceptive for an insurer to adjust its position in response to a significant change in the law, such as that reflected in Boston Gas, and insist that its insured contribute towards indemnity payments made on its behalf.

(3) New England Insulation confirms that applying Boston Gas is not inequitable where the insured cannot locate potentially applicable policies. In New England Insulation, the Court confirmed that, under Boston Gas, an insured must "participate in the allocation during periods when it could not buy insurance covering asbestos-related claims." Id. at *4.

WHEREFORE, for the reasons set forth above, as well as in Utica's initial memorandum of law and reply memorandum, the Court should allow Utica's motion for summary judgment.

UTICA MUTUAL INSURANCE CO., and
REPUBLIC FRANKLIN INSURANCE CO.,

By their attorneys,

/s/ Kurt B. Fliegauf
Russell F. Conn (BBO #094440)
Kurt B. Fliegauf (BBO #564329)
CONN KAVANAUGH ROSENTHAL
PEISCH & FORD, LLP
Ten Post Office Square
Boston, MA 02109
(617) 482-8200
RConn@ConnKavanaugh.com
KFliegauf@ConnKavanaugh.com

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the 29th day of May, 2013.

/s/ Kurt B. Fliegauf

823524.2

# TAB 1

83 Mass.App.Ct. 631
Appeals Court of Massachusetts,
Suffolk.

NEW ENGLAND INSULATION COMPANY, INC.
v.
LIBERTY MUTUAL INSURANCE COMPANY.

No. 11–P–1617. | Sept. 12, 2012. | May 22, 2013.

**Synopsis**
**Background:** Insulation company filed action liability (CGL) insurer for the period from 1973 through 1983, asserting a breach of contract in connection with method used by insurer to calculate future indemnity payments for asbestos-related injuries. The Superior Court Department, Suffolk County, Judith Fabricant, J., dismissed complaint for failure to state a claim. Insulation company appealed. The Superior Court, Suffolk County, Judith Fabricant, J., dismissed complaint for failure to state a claim. Insulation company appealed.

**[Holding:]** The Appeals Court, Cohen, J., held that the pro rata time-on-the-risk allocation method adopted by the Supreme Judicial Court in *Boston Gas Co. v. Century Indem. Co.* governed insurer's liability for future indemnity payments, such that insulation company was required to participate in the allocation for periods of loss in which it was unable to buy insurance coverage for asbestos-related claims.

Affirmed.

*Insurance,* Comprehensive liability insurance, Coverage, Construction of policy. *Contract,* Insurance, Indemnity, Construction of contract. *Indemnity. Asbestos.*
CIVIL ACTION commenced in the Superior Court Department on July 13, 2010. A motion to dismiss was heard by *Judith Fabricant,* J.

**Attorneys and Law Firms**

*Elizabeth J. Stewart* (*Susan J. Baronoff* with her) for the plaintiff.

*Kim V. Marrkand* (*Alec Zadek* with her) for the defendant.

Present: Cohen, Rubin, & Carhart, JJ.

**Opinion**

COHEN, J.

***1** The central issue in this appeal is whether the pro rata time-on-the-risk allocation method adopted by the Supreme Judicial Court in *Boston Gas Co.* v. *Century Indem. Co.,* 454 Mass. 337, 910 N.E.2d 290 (2009) (*Boston Gas* ), should be applied to determine the extent of indemnity coverage owed by Liberty Mutual Insurance Company (Liberty) for claims brought against its insured, New England Insulation Company, Inc. (NEIC), for asbestos-related injuries. Procedurally, the appeal arises from the dismissal of NEIC's complaint against Liberty, [1] which, as pertinent here, sought damages and declaratory relief on the premise that the *Boston Gas* allocation method was not applicable because of differences in wording between the Liberty policies and those construed in *Boston Gas.* A judge of the Superior Court concluded that those differences were not significant and that *Boston Gas* was controlling. Accordingly, she dismissed the complaint for failure to state a claim upon which relief may be granted. [2] See Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974). [3]

NEIC appeals from the ensuing judgment, but argues error only in the judge's determination (see note 2, *supra* ) that Liberty did not breach its contractual duty to indemnify by deciding, in June, 2010, that it would apply the *Boston Gas* allocation method to future indemnity payments and allocate shares of losses to NEIC for periods when it did not have coverage. For the following reasons, we affirm.

1. *Standard of review.* Our review of the dismissal of a complaint pursuant to Mass.R.Civ.P. 12(b)(6) is de novo. *Dartmouth v. Greater New Bedford Regional Vocational Technical High Sch. Dist.,* 461 Mass. 366, 373, 961 N.E.2d 83 (2012). "We accept as true the allegations in the complaint and draw every reasonable inference in favor of the plaintiff. We consider whether the factual allegations in the complaint are sufficient, as a matter of law, to state a recognized cause of action or claim, and whether such allegations plausibly suggest an entitlement to relief." *Id.* at 374, 961 N.E.2d 83 (citation omitted).

2. *The complaint.* The relevant allegations of NEIC's complaint may be summarized as follows. NEIC has been in the business of installing insulating materials in commercial

WestlawNext © 2013 Thomson Reuters. No claim to original U.S. Government Works. 

buildings for more than seventy years. From 1973 through 1983, NEIC was insured under a series of comprehensive general liability (CGL) policies issued by Liberty, in the form attached to the complaint as Exhibit 1. At other relevant periods of time, NEIC was insured under CGL policies issued by Travelers Insurance Company (Travelers), Century Indemnity Company (Century), and Kemper Insurance Company (Kemper).

***2** In or around 1980, NEIC began to receive claims for damages from individuals asserting that they were victims of asbestos-related diseases. [4] In most cases, there was a long period between the claimant's exposure to asbestos and the manifestation of asbestos-related disease. NEIC presented the claims to Liberty, which was its insurer at the time the claims were presented. Liberty accepted liability up to its coverage limits and, since 1980, has defended and indemnified NEIC.

**[1]** **[2]** NEIC urged a predecessor insurer, Travelers, to join in the defense and indemnity payments then being shouldered by Liberty alone. Travelers refused, first claiming that its policies (issued between 1954 and 1972) were not triggered, [5] and later claiming that the policies never existed or were lost. NEIC demanded that Liberty take legal action to compel Travelers's participation in paying claims, and, when Liberty declined to do so, NEIC ultimately brought its own lawsuit against Travelers in Federal court. [6]

In October, 2006, the Federal case resulted in a mediated settlement that ultimately led to the execution of a cost-sharing agreement by and among Travelers, Liberty, and Century. Under this agreement, defense and indemnity payments were allocated among these insurers. [7] Thereafter, NEIC learned that its pool of available coverage was larger than anticipated, because a few of the policies issued to it by Kemper between 1993 and 2000 did not contain asbestos liability exclusions. [8]

On July 24, 2009, the Supreme Judicial Court, in response to certified questions from the United States Court of Appeals for the First Circuit, issued its decision in *Boston Gas,* adopting a pro rata mechanism for determining damage allocation among multiple insurers and the insured, in the context of a case where an environmental hazard gave rise to a lengthy period of property damage. [9] After *Boston Gas* was decided, Kemper informed NEIC that the reasoning of *Boston Gas* applied to asbestos cases and that Kemper would not participate in settlements unless NEIC was allocated a pro rata share for any years when it had no coverage for asbestos claims. Initially, a representative of Liberty indicated that Liberty did not believe that *Boston Gas* applied to asbestos claims; however, on June 14, 2010, Liberty sent NEIC a letter purporting to terminate Liberty's participation in the cost-sharing agreement and giving notice that Liberty would apply the *Boston Gas* allocation methodology to future indemnity payments. [10]

Fairly understood, count I of the complaint alleges, in relevant part, that Liberty breached its contractual duty to indemnify by allocating a proportionate share of future indemnity payments to NEIC for periods when it did not have coverage. [11]

***3** 3. *Policy terms.* The policy form attached to the complaint as Exhibit 1, contains the following language. The insuring agreement provides, in relevant part:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> "Coverage A, bodily injury or
>
> "Coverage B, property damage
>
> "to which this policy applies, caused by an occurrence...."

The definitions section provides, in relevant part:

> " '[B]odily injury' means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom....
>
> " '[O]ccurrence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

4. *Discussion.* In *Boston Gas,* the Supreme Judicial Court addressed the scope of coverage provided under occurrence-based liability policies issued by Century, for claims brought against Boston Gas Company for third-party property damage caused by progressive environmental contamination originating from its operation of a manufactured gas plant. Because Century had provided coverage for less than the full period of years in which contamination occurred, the question arose as to how to allocate liability to its policies. [12]

**[3]** The court considered the two principal approaches adopted by State courts in such cases: (1) the "joint and several" or "all sums" allocation approach, holding that once a policy is triggered, the insurer becomes liable for all sums that it is legally obligated to pay, up to its policy limits, including sums attributable to injury or damage that did not occur during the insurer's policy period; and (2) the pro rata allocation approach, holding that a portion of the total loss should be allocated to each triggered policy, and that the insured normally should participate in the allocation for periods of loss when it had no coverage. *Boston Gas,* 454 Mass. at 351–353, 910 N.E.2d 290. The court elected to use the pro rata approach, reasoning that because the policies in question specified that coverage would apply to injury or damage occurring "during the policy period," they should be read to cover only that portion of the insured's liability "attributable to the quantum of property damage occurring during a given policy period." *Id.* at 358–359, 910 N.E.2d 290. The court held further that where the evidence would not permit a more accurate allocation of losses during each policy period, the most equitable method of proration was to allocate based upon the relative periods of time each insurer was on the risk. *Id.* at 370, 910 N.E.2d 290. Finally, the court held that the insured should be required to participate in the allocation for uncovered periods, whether or not coverage was commercially available during those periods. *Id.* at 370–372, 910 N.E.2d 290.

In the present appeal, NEIC does not argue that asbestos claims per se fall outside the framework established by *Boston Gas.* Its contention is that the particular wording of the definition of "bodily injury" contained in the Liberty policies mandates the use of joint and several allocation. NEIC emphasizes that, unlike the policies discussed in *Boston Gas,* the Liberty policies incorporate the determinative phrase "during the policy period" within the definition of "bodily injury," which reads: "bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom." According to NEIC, the words "including death at any time resulting therefrom" signify that each triggered Liberty policy will provide coverage, on a joint and several basis, for bodily injuries that occur, but do not necessarily end, during the policy period.

***4** We disagree that this formulation of the definition of "bodily injury" mandates the use of the joint and several method of allocation. The bodily injury definition simply sets forth the unremarkable proposition, recognized in *Boston Gas,* that in the typical case where the time of injury is easily determined, the policy in place when the injury occurs will cover all consequential damages, even those taking place after the policy period. *Boston Gas,* 454 Mass. at 348, 910 N.E.2d 290. However, in cases involving injury that develops insidiously over time, it is not readily apparent how to allocate the loss to a particular policy. In asbestos cases, no less than cases of progressive environmental damage, "it is both scientifically and administratively impossible to allocate to each policy the liability for injuries occurring only within its policy period." *Id.* at 350, 910 N.E.2d 290, quoting from Comment, Allocating Progressive Injury Liability Among Successive Insurance Policies, 64 U. Chi. L.Rev. 257, 257–258 (1997).

As a result, courts have been required to choose an allocation method, taking into account not only the terms of the insurance contract, but also public policy considerations. In *Boston Gas,* after comprehensive and detailed analysis, the Supreme Judicial Court elected to follow the growing plurality of States that apply pro rata allocation in such circumstances, because it "promotes judicial efficiency, engenders stability and predictability in the insurance market, provides incentive for responsible commercial behavior, and produces an equitable result." *Boston Gas,* 454 Mass. at 366, 910 N.E.2d 290.

NEIC offers no persuasive reason why the pro rata method articulated in *Boston Gas* should not control here. Insofar as they bear on the question of allocation, the terms of the Liberty policies are not meaningfully different from the terms of the policies at issue in *Boston Gas.* Like the policies analyzed in *Boston Gas,* the Liberty policies unambiguously limit the promised "all sums" coverage to injuries that occur "during the policy period," thus supporting the use of pro rata allocation. Furthermore, the public policy considerations relied upon in *Boston Gas* are equally relevant here. [13]

Little need be said about NEIC's alternative argument that, even if pro rata allocation is utilized, NEIC should not be required to participate in the allocation during periods when it could not buy insurance covering asbestos-related claims. The argument is foreclosed by *Boston Gas,* where the Supreme Judicial Court considered and rejected as inequitable any such "unavailability exception." *Boston Gas,* 454 Mass. at 371 & n. 41, 910 N.E.2d 290.

***5** NEIC also argues that, in view of the procedural posture of the present case at the time of dismissal, count I should be

remanded to the trial court for further proceedings. Although NEIC is correct that Liberty's motion to dismiss did not refer to the portion of count I now at issue, dismissal of that count in its entirety was appropriate in the circumstances. Contrary to NEIC's position, NEIC was not deprived of the chance to make its legal arguments concerning count I. Prior to hearing the motion to dismiss, the judge already had determined that the holdings in *Boston Gas* precluded recovery on count I, when, after extensive briefing and argument, she denied NEIC's motion for a preliminary injunction to prevent Liberty from implementing its revised coverage position. At the hearing on the motion to dismiss, there was further discussion of count I. NEIC had ample opportunity to argue the validity of this claim.

Nor is it necessary to remand count I to afford NEIC the opportunity to conduct discovery on the drafting history of the Liberty policy or the availability of asbestos coverage at various times. Because the policy language at issue is unambiguous, and because *Boston Gas* requires NEIC to participate in the allocation of losses with no exception for periods when asbestos coverage was unavailable, neither of these proposed areas of discovery has any bearing upon the viability of NEIC's claim.

5. *Conclusion.* There was no error in the dismissal of NEIC's amended complaint for failure to state a claim upon which relief may be granted, including so much of count I as alleged, in substance, that Liberty's application of the holdings of *Boston Gas* was in breach of the insurance contracts.

*Judgment affirmed.*

1 The operative pleading is NEIC's first amended complaint, filed on August 5, 2010.

2 The complaint was in four counts, all of which were dismissed. Count I alleged that Liberty had breached the insurance contracts by seeking contribution from NEIC, and by failing to seek full contribution from other insurance companies. The motion judge rejected the latter theory based upon principles of res judicata, see note 6, *infra,* and NEIC does not appeal from that determination. Count II alleged breach of a cost-sharing agreement among insurance companies, of which NEIC claimed to be a third-party beneficiary. See note 7, *infra.* Count III alleged, inter alia, that Liberty interfered with a settlement agreement between NEIC and Travelers Insurance Company (Travelers). Count IV sought declaratory relief. On appeal, NEIC challenges only the judge's determination on count I that, under *Boston Gas,* NEIC is required to contribute.

3 Previously, the same judge had denied NEIC's motion for a preliminary injunction.

4 The insulation materials installed by NEIC from 1935 to the early 1970s contained asbestos.

5 " 'Trigger of coverage' is a term of art whereby the court describes what must occur during the policy period for potential coverage to commence under the specific terms of an insurance policy." *Boston Gas,* 454 Mass. at 349, 910 N.E.2d 290, quoting from *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 518, 838 N.E.2d 1237 (2005). See *Boston Gas, supra* at 349–350 & n. 21, 910 N.E.2d 290. See also *A.W. Chesterton Co., supra* at 518–523 (discussing trigger of coverage in the context of asbestos claims). Determining whether any given policy is triggered is a separate question from determining the amount that an insurer must pay to satisfy its coverage obligations when multiple policies are triggered. See *Boston Gas, supra* at 350–351 & n. 22, 910 N.E.2d 290. This appeal involves only the latter inquiry.

6 NEIC later sued Liberty, contending that Liberty had been obligated to seek contribution from Travelers or to reimburse NEIC for the costs it incurred in bringing its own suit against Travelers. In that action, this court affirmed summary judgment in favor of Liberty, holding that Liberty was under no such obligation. *New England Insulation Co.* v. *Liberty Mut. Ins. Co.,* 74 Mass.App.Ct. 1102 (2009).

7 NEIC was not a party to the cost-sharing agreement, but claims to be a third-party beneficiary of that agreement.

8 The complaint does not reflect whether Kemper ever joined in the cost-sharing arrangement.

9 As discussed below, *Boston Gas* held that each insurer's liability should be determined by using pro rata allocation rather than joint and several allocation. 454 Mass. at 358–366, 910 N.E.2d 290. Of particular significance here, the court also held that the allocation should be made in proportion to time on the risk, and that the insured would be required to participate in the allocation for uncovered periods, including those periods where insurance for environmental contamination was unavailable due to pollution exclusions. *Id.* at 370–373, 910 N.E.2d 290.

10 Although NEIC's complaint speaks of "future claims," it goes on to refer to the consequences of Liberty's change in position for indemnity payments in pending cases.

Thus, read in context, the complaint must be understood to relate to Liberty's position as to future indemnity payments, and not future claims. This understanding is confirmed by the June 14, 2010, letter from Liberty to NEIC, which appears in the record appendix as an exhibit to NEIC's motion for a preliminary injunction. The letter states that Liberty is giving notice of its intent to terminate its participation in the cost-sharing agreement, as provided by the agreement's terms, and that it will apply the allocation method set forth in *Boston Gas* to calculate its percentage share of all future indemnity payments.

11 Liberty does not disagree with this understanding of count I.

12 Like the present case, *Boston Gas* did not present any issue as to trigger of coverage. See note 5, *supra.* It came before the Supreme Judicial Court on certified questions from the United States Court of Appeals for the First Circuit, which were limited to the issue of allocation.

13 We are unpersuaded by NEIC's analogy to a line of cases, discussed in *Boston Gas,* 454 Mass. at 362, 364, 910 N.E.2d 290, involving policies containing a "noncumulation clause." See *Chicago Bridge & Iron Co.* v. *Certain Underwriters at Lloyd's, London,* 59 Mass.App.Ct. 646, 655–656, 797 N.E.2d 434 (2003) (decided under Illinois law); *Liberty Mut. Ins. Co.* v. *Those Certain Underwriters at Lloyds,* 650 F.Supp. 1553, 1559 (W.D.Pa.1987); *Hercules, Inc.* v. *AIU Ins. Co.,* 784 A.2d 481, 493–494 (Del.2001). Viewing the noncumulation clause as an express agreement that any given policy will cover injury or damage continuing after the policy period has ended, provided the policy initially was triggered by some injury or damage, the courts in these cases concluded that the presence of a noncumulation clause supported joint and several allocation. Here, however, as NEIC acknowledges, the Liberty policies do not contain a noncumulation clause.

**Parallel Citations**

2013 WL 2171903 (Mass.App.Ct.)

End of Document

© 2013 Thomson Reuters. No claim to original U.S. Government Works.