UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GRAPHIC ARTS MUTUAL INSURANCE CO. ) | | |
| UTICA MUTUAL INSURANCE CO., and ) | | |
| REPUBLIC FRANKLIN INSURANCE CO., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| D.N. LUKENS, INC., ) | CIVIL ACTION |
| ) | NO. 11-cv-10460-TSH |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| ARROWOOD INDEMNITY COMPANY, ) | |
| AMERICAN INTERNATION PACIFIC ) | |
| INSURANCE CO., and ) | |
| GRANITE STATE INSURANCE CO., ) | |
| ) | |
| Nominal Defendants/Interested Parties. ) | |

**FINDING AND ORDER ON PLAINTIFFS/NOMINAL DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT**
May 29, 2013

HILLMAN, District Judge.

### *Introduction*

Plaintiffs and Nominal Defendants/Interested Parties are liability insurers of D.N. Lukens,

Inc. ("Lukens"). Plaintiffs, Graphic Arts Mutual Insurance Co. ("Graphic Arts"),  Utica Mutual

Insurance Co. ("Utica Mutual") and Republic Franklin Insurance Co. ("Republic Franklin")

(collectively, "Utica"), seek a declaratory judgment that Lukens must contribute its pro rata share

of any payments made to settle or satisfy any judgment that may enter against it in five toxic tort

suits, and any future toxic tort claims or suits that may be made or filed against Lukens in which the coverage of any of the Plaintiff-insurers is implicated. Utica has joined Nominal Defendants/Interested Parties, Arrowood Indemnity Company ("Arrowood"), American International Pacific Insurance Company ("AIPIC") and Granite State Insurance Company ("Granite State") (collectively, "Nominal Defendants").

Lukens denies that it should share in the payments and has asserted counterclaims under Mass. Gen. Laws ch. 93A ("Chapter 93A") against Utica based upon their conduct with respect to the settlement of one of the toxic tort cases, their failure to establish conflict screens between the claims handlers in the cases and the claims handlers for this declaratory judgment action, and for their refusal to relinquish control of the litigation of the remaining cases.  Lukens has also brought Chapter 93A actions against Nominal Defendants for their failure to cede control of the defense of the underlying cases, and against AIPIC and Granite State, individually, for their conduct with respect to the settlement of the toxic tort case. Both Utica and Nominal Defendants have filed separate motions for summary judgment seeking identical relief. Accordingly, and for the reasons set forth below, I grant their motions in part and deny them in part.

## I.    Background

Lukens is a distributor/supplier of raw materials serving the coatings, plastics, graphic arts and other industries. Between 2006 and 2010, Lukens was named as a defendant in five lawsuits in Massachusetts Superior Court by plaintiffs who alleged significant injuries from exposure to toxic substances owned, supplied, sold or controlled by Lukens. Of those five lawsuits, one sought redress for injuries from a variety of chemicals and toxic metals, while the remaining four suits alleged harm by exposure to asbestos.  The non-asbestos toxic tort suit was brought in Worcester Superior Court by Frank Mastrogiacomo (the "Mastrogiacomo suit").  The

plaintiffs in the four asbestos cases are: Robert Belanger (the "Belanger suit"), Donna MacDowell, executrix of the estate of Richard MacDowell (the "R. MacDowell suit"), Patricia MacDowell, executrix of the estate of Kenneth MacDowell (the "K. MacDowell suit") and Debra Russo, executrix of the estate of Peter Russo (the "Russo suit").  The Mastrogiacomo suit was settled and Lukens moved for, and received, summary judgment in its favor in the Russo and Belanger suits. Both MacDowell suits are currently pending in Middlesex Superior Court. Because courts have disposed of the Russo and Belanger suits through summary judgment, this Order is limited to the MacDowell[1] suits and the Mastrogiacomo settlement.

On July 24, 2009, while the Mastrogiacomo suit was pending, the Massachusetts Supreme Judicial Court ("SJC") decided the case *Boston Gas Co. v. Century Indem. Co.*, 454 Mass. 337 (2009). That decision dramatically changed the landscape for insurance coverage over progressive injury claims. The SJC held that insurers *and insureds alike* must contribute to any judgment entered in a progressive injury claim on a pro rata basis, calculated by the length of time each was "on the risk." *Id.* at 373. On November 3, 2009, when the Mastrogiacomo suit was three weeks from trial, Utica informed Lukens of the *Boston Gas* decision and that, according to Utica's interpretation of *Boston Gas*, Lukens was now responsible for its pro rata share of any settlement or judgment because there were periods of time during the risk exposure period that Lukens was uninsured. Utica further informed Lukens that they were conveying settlement authority to counsel in an effort to resolve the case prior to trial. Lukens, understandably confused and upset by this sea change informed Utica that they believed they were insured for all relevant periods and asked for forbearance in order to search for additional insurance coverage.

---

[1] Utica agrees that summary judgment entered for Lukens in the Russo and Belanger cases. Curiously, no oppositions were filed to Lukens' motions for summary judgment in either case.  Utica urges this Court to determine the coverage issues on Russo and Belanger because no final judgment has entered which I choose not to do.  The declaration that is set out below should work to answer any questions about risk assessment on progressive injury cases, including the Russo and Belanger suits if the uncontested summary judgments are overturned on appeal.

Despite Lukens entreaties, Utica settled the Mastrogiacomo suit for $145,000. By Utica's calculations, $14,964 of that amount was attributable to Lukens under the *Boston Gas* rubric and remains unpaid.[2]

With respect to the four asbestos suits, Lukens was only able to identify insurance policies for the following periods:

- American Fidelity Company (i.e., "Chartis"): 8/14/1987 – 8/14/1989;

- Royal Insurance Company of America (i.e., "Arrowood"): 8/14/1989 – 9/8/199;

- Utica (without asbestos exclusion): 9/8/1992 – 11/1/2001;

- Utica (with asbestos exclusion): 11/1/2001 – 11/1/2004.

Lukens submitted the asbestos claims to Utica, which agreed to provide Lukens with a defense, although those defenses were under a reservation of rights whereby each individual Utica insurer agreed to completely indemnify Lukens only for their time on the risk, while reserving their rights to seek contribution from Lukens for any uninsured periods under the holding in *Boston Gas*. Based upon those reservations, Lukens sought to take control over the defense in the asbestos cases. Lukens sent Utica its requests to take over the R. MacDowell suit, pending for nearly fourteen months, on February 17, 2012, and the K. MacDowell suit, pending for over eighteen months, on June 28, 2012.[3]

## II.   Summary Judgment Standard

Summary judgment is appropriate where, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a

---

[2] The Mastrogiacomo suit also had a workers' compensation lien in excess of $18,000.  Lukens' contribution, therefore, would be swallowed up by that lien. Coincidentally, Utica was the workers' compensation carrier.
[3] Both MacDowell suits were dismissed without prejudice and re-filed; thus those cases had actually been litigated for a longer period of time than set forth above. *See infra* p.12.

matter of law." *Carroll v. Xerox Corp.*, 294 F.3d 231, 236 (1st Cir. 2002) (citing Fed. R. Civ. P. 56(c)). "A 'genuine' [dispute] is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Sensing v. Outback Steakhouse of Fla., LLC*, 575 F.3d 145, 152 (1st Cir. 2009) (quoting *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004)).

When considering a motion for summary judgment, the Court construes the record in a light most favorable to the nonmoving party and makes all reasonable inferences in favor thereof. *Id.* at 153. The moving party bears the burden to demonstrate the absence of a genuine issue of material fact within the record. *Id.* at 152. "Once the moving party has pointed to the absence of adequate evidence supporting the nonmoving party's case, the nonmoving party must come forward with facts that show a genuine issue for trial." *Id.* (internal citations omitted). "[T]he nonmoving party 'may not rest upon mere allegations or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine [dispute] of material fact as to each issue upon which [s/he] would bear the ultimate burden of proof at trial." *Id.* (internal citations omitted). The nonmoving party cannot rely on "conclusory allegations" or "improbable inferences." *Id.* (internal citations omitted). "The test is whether, as to each essential element, there is 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Id.* (internal citations omitted).

### III. Discussion

Lukens claims that summary judgment should be denied for several reasons: 1) Utica is estopped from disclaiming the obligation to provide complete indemnity in the asbestos cases because it refused to relinquish control of the defense of those cases to Lukens; 2) there are questions of fact which prevent an allocation in accordance with *Boston Gas*; 3) Utica failed to

5

join a necessary party; 4) Lukens is entitled to discovery regarding an Arrowood policy from 1976–1979; 5) applying the holding from *Boston Gas* would be inequitable; and 6) there are material facts which preclude the entry of summary judgment on Lukens counterclaim for violation of Chapter 93A.

> *a.* **Boston Gas** *applies in the present matter.*

The SJC's decision in *Boston Gas* established how payments to satisfy judgments in "progressive injury claims" are allocated amongst insurers. By its most basic definition, a "progressive injury" is one that occurs over a number of years due to environmental damage or exposure to toxic substances. *Boston Gas*, 454 Mass. at 348. The SJC held that insurers and insureds alike must contribute to any judgment entered in a progressive injury claim on a "pro rata" basis, calculated by the length of time each was "on the risk." *Id.* at 372-73. Utica and the Nominal Defendants argue that this Court is bound by *Boston Gas* because the underlying lawsuits allege progressive injuries. I agree.

The allocation of liability for injuries caused by environmental damage and toxic exposure are often referred to as "long-tail claims." *Id.* at 348. Long-tail claims are those that "could occur many years after [a] triggering event and the expiration of the insurance policy." *In re Liquidation of Am. Mut. Liab. Ins. Co.*, 434 Mass. 272, 291, 747 N.E.2d 1215 (2001). Most insurance policies issued before the mid-1980s provided occurrence-based coverage rather than "claims-made" coverage. "As a result, the insurance policies were said to have a 'long-tail' of coverage that applied to claims brought long after the occurrence that gave rise to the claim of liability." Rebecca M. Bratspies, *Splitting the Baby: Apportioning Environmental Liability Among Triggered Insurance Policies*, 1999 BYU L. Rev. 1215, 1217 n.13 (1999). "These long-tail claims cause problems for courts because '[e]nvironmental damage and toxic exposure cases

often involve injuries that occur over a number of years, known as 'progressive injuries.'" *Boston* Gas, 454 Mass. at 348 (quoting Michael G. Doherty, Comment, *Allocating Progressive Injury Liability Among Successive Insurance Policies*, 64 U. Chi. L. Rev. 257 (1997)). Clearly, both MacDowells suffered such progressive injuries.

One issue that *Boston Gas* left undecided was when a progressive injury first occurs.  *See Boston Gas*, 454 Mass. at 350. Establishing when a progressive injury occurs is critical because that date begins the time period over which damages are allocated, and, therefore, can drastically affect the pro rata shares of insurers and insureds. The SJC acknowledged in *Boston Gas* that other jurisdictions have utilized four different approaches to approximate when a progressive injury occurs: "(1) manifestation; (2) injury-in-fact or actual damage; (3) exposure; and (4) continuous." *Id.* Utica asserts that the "continuous trigger" method, which calculates a progressive injury from the time of exposure to a hazardous substance to the time when physical harm from such exposure becomes manifest, is most applicable in the present matter. *See id.* at n.21.

The holding from *Boston Gas* applies to the three underlying cases in this action. First, the suits at issue here are all "long-tail" losses involving progressive diseases such as mesothelioma. The claims do not involve discreet injuries as a result of a single identifiable event such as an auto accident or medical malpractice. *See Boston Gas*, 337 Mass. at 348. Second, there is no empirically sound "fact-based" method for specifically assigning the amount of injury that each claimant suffered during each year of the overall period of injury. *Id.* at 367. In such circumstances, the SJC has dictated that courts should apply the default methodology of "time on the risk" and allocate liability on the basis of the period of time that each insurer's policies were in effect. *Id.*

Utilizing the "continuous trigger" approach provides Lukens with the greatest amount of insurance coverage and most accurately reflects the "reasonable expectations" of an insured. *See Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1044 (D.C. Cir. 1981). If the "manifestation" approach were used, Lukens would have no insurance coverage for the underlying asbestos suits, as each alleges that the injury manifested at a time when Lukens's effective insurance policies contained asbestos exclusions. If the "exposure" approach were used, Lukens would have no insurance coverage for the underlying asbestos suits, as each alleges an exposure at a time that Lukens did not have, or is unable to locate, applicable insurance. Moreover, the "injury-in-fact" approach is not practical for personal progressive injury cases, as it is almost impossible to determine when the exposure to a hazardous substance will result in actual physical injury. *See Boston Gas*, 454 Mass. at 350 ("In most of these cases, 'it is both scientifically and administratively impossible to allocate to each policy the liability for injuries occurring only within its policy period.'") (quoting Doherty, *supra* at 257-58); *A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund*, 445 Mass. 502, 520 n.11, 838 N.E.2d 1237 (2005) ("[T]he injurious effects of asbestos may not be apparent, or capable of medical diagnosis, for many years after initial exposure . . . ."); *Eagle-Picher Indus., Inc. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 18-19 (1st Cir. 1982) (describing the process by which the inhalation of asbestos fibers damages the lungs over time without detection, and may eventually result in disabling disease or death); *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 633 F.2d 1212, 1218 (6th Cir. 1980) ("[I]t is almost impossible for a doctor to look back and testify with any precision as to when the development of asbestosis 'crossed the line' and became a disease."). Because Lukens, as the insured, bears the burden of proving that a loss triggers coverage, *see Trs. of Tufts Univ. v. Commercial Union Ins. Co.*, 415 Mass. 844, 853, 616 N.E.2d 68 (1993), utilizing the "injury-in-

fact" approach is likely to result in the complete lack of insurance coverage for the underlying suits. Accordingly, I hereby grant Utica's motion and enter a declaration that the methodology outlined in *Boston Gas* applies to the MacDowell suits and that the "continuous trigger" approach should be used to determine when the injuries occurred, thereby obligating Lukens to pay its proportionate share of any judgment entered in either suit.

### b.   *Whether Lukens must contribute to the settlement of the Mastrogiacomo suit.*

The insurance companies seek a declaration that Lukens must contribute on a pro rata basis "to any payments made to *settle,* or satisfy any judgment that may enter against it in" the Mastrogiacomo suit, the remaining asbestos cases, and any future toxic tort cases. Because *Boston Gas* controls, *see supra* Part III.A, any future judgments awarding damages can be broken down to reflect the amount of the judgment that those on the risk would owe to a plaintiff. What is troublesome from the Mastrogiacomo suit is the fact that a settlement was reached without the input or acceptance from Lukens. For this Court to order Lukens to pay its proportionate share of that settlement, there must be authority for Utica to bind Lukens to pay Mastrogiacomo despite the fact that Lukens never acquiesced to such settlement. Utica argues that *Boston Gas* provides that authority and requires Lukens to pay its pro rata share of *settled* cases. To hold otherwise, they argue, would fly in the face of the "well-established public policy favoring the private settlement of disputes." *Cabot Corp. v. AVX Corp.*, 448 Mass. 629, 638, 863 N.E.2d 503 (2007). Nothing in the record or in *Boston Gas*, however, would require such result.

On the contrary, *Boston Gas* does not discuss binding settlements in the absence of the consent of all on the risk. In *Boston Gas*, the SJC was confronted with allocating risk for liabilities for "ultimate net loss" in the language of the policies at issue. The policy defined "ultimate net loss" as: "[T]he sum actually paid or payable in cash in the settlement or

satisfaction of losses for which [*Boston Gas*] is liable either by adjudication *or compromise with the written consent* of [Century]." *Boston Gas*, 454 Mass. at 343 (emphasis added). Thus, any settlement under the *Boston Gas* rubric contemplates the written consent of the parties to a settlement. Furthermore, Utica's conduct in waiting until the eve of trial before informing Lukens that they were suddenly on the risk and were expected to contribute towards a settlement or judgment does nothing to advance their argument. The fact that Lukens sought Utica's forbearance from moving forward with a resolution of the suit without success also militates against Utica's position on this issue. Accordingly, I hereby deny Utica's motion as to the Mastrogiacomo suit and enter a declaration that, under the facts of this case, Lukens is not bound to pay a proportionate share of the Mastrogiacomo settlement.

### c.  *Utica is not estopped from seeking indemnity from Lukens even though it refused to relinquish control of the defense when demanded by Lukens.*

Lukens argues that in both MacDowell asbestos suits, Utica reserved its right to disclaim the duty to indemnify any settlement or judgment based upon policy conditions and exclusions and pursue a "time on the risk" allocation for the uninsured periods. Based upon Utica's reservation of rights, Lukens sought to take over the defense of the cases, and in each instance Utica refused to relinquish control. These refusals came despite the fact that under Utica's assessment of time on the risk, Lukens would be assigned in excess of 60% of the indemnity allocation.[4] This, Lukens argues, prevents Utica from disclaiming complete indemnity to Lukens, including those periods when Lukens was uninsured. Utica responds that it has not asserted a right to disclaim its indemnity obligation to Lukens during the applicable policy periods, but rather it has disclaimed only those periods when Utica was not on the risk, in accordance with the holding from *Boston Gas*.

---

[4] Lukens did not seek to take control of the defense in the Mastrogiacomo suit.

The SJC has long recognized that when an insurer reserves its right to disclaim its duty to indemnify against a lawsuit, allowing the insurer to control the defense gives rise to an impermissible conflict of interest:

> control of the case by the insurer, when it may later disclaim liability under the policy, means that the insured's rights may be adversely affected. He has no opportunity to control aspects of the case essential to determination of liability or settlement. If liability is established, or a settlement reached, and the insurer has a valid ground for disclaimer, the insured is left with a liability which, had he been able to defend or settle on other terms, might never have existed.

*Three Sons, Inc. v. Phx. Ins. Co.*, 357 Mass. 271, 276, 257 N.E.2d 774 (1970). Thus, where the insurer refuses to relinquish control of the defense of the lawsuit, it may not disclaim its duty to indemnify against any settlement or judgment. *Id.* at 277 (noting that the defendant-insurer "had a duty to defend [the insured] in the actions at law without a reservation of rights or claim of nonwaiver, so long as it insisted on retaining control of the defense."); *Sullivan v. Utica Mut. Ins.*, 439 Mass. 387, 406-07, 788 N.E.2d 522 (2003) (holding that when an insurer asserts a reservation of rights, the "insured may require the insurer either to relinquish its reservation of rights or relinquish its defense of the insured and reimburse the insured for its defense costs"); *Safety Ins. Co. v. Day*, 65 Mass. App. Ct. 15, 24, 836 N.E.2d 339 (2005) ("Should the insurer give timely notice that it may dispute coverage, the insured then has a right to take part in the defense to ensure that her interests are not compromised."). Despite this recent case law, I agree with Utica's position that their reservation of rights did not create a duty to surrender the defense of the underlying asbestos cases. Further, even if Utica were obligated to surrender the defense, that remedy would not make Utica responsible for the *entire* risk.

There is no question that the holding from *Boston Gas* creates complicated and dramatic changes in the assessment of risk for progressive injury cases. Albeit late, Utica clearly communicated its position to fully indemnify Lukens for the periods that they were on the risk

and that position has been validated by this Court. Whether that reservation triggered an obligation to turn over the entire defense of both MacDowell suits to Lukens' counsel of choice does not necessarily follow. The insuring agreements for "bodily injury" provide a contractual basis for Utica's right to control the defense of "suits" based on such claims as well as its right to settle such claims. Those rights, however, were not unlimited. The agreements expressly limit their scope as follows: "[t]his insurance applies to 'bodily injury' and 'property damage' only if: . . . [t]he 'bodily injury' or 'property damage' occurs during *the policy period*." (emphasis added). Thus, Utica would be in control of the defense only "during the policy period."

Furthermore, the defense of the asbestos cases had been on-going for some time before Lukens sought to take over the defense. The R. MacDowell suit was filed in Middlesex Superior Court in December of 2008 while the K. MacDowell suit was filed in Middlesex Superior Court in June of 2010 and re-filed in December of that year after Lukens was dismissed without prejudice to allow that case to go to trial. The R. MacDowell suit was similarly re-filed in 2011. Significantly, Utica's reservation of rights was not a withdrawal of coverage as contemplated in *Three Sons* which would create the conflict requiring Utica to cede its defense to Lukens. Its "reservation" acts more as a declaration notifying Lukens that they would indemnify them for the times that their policies were in effect, but not for the periods that Lukens was uninsured. Whatever the import of the reservation of rights, it does not follow that Utica is responsible to assume Lukens uninsured periods simply because Lukens was not given control of the defense of the underlying cases.

The issue of "control" in the MacDowell suits is a significant issue under *Boston Gas*. It begs the question: since *Boston Gas* holds Lukens liable for the times it was uninsured, does this mean that Utica and Lukens bear pro rata responsibility for the defense of a claim for the same

period of time? According to the holding in *Boston Gas*, it does. "[I]t is equally fair and reasonable to hold the policyholder responsible for that portion of *the total defense* and indemnity costs over which he or she chose to assume the risk." *Boston Gas*, 454 Mass. at 370 (quoting *Towns v. N. Sec. Ins. Co.*, 184 Vt. 322, 347, 964 A.2d 1150 (2008)) (emphasis added). While this result has the potential for creating a maelstrom of disputes between insurers and insureds, it is nevertheless consistent with the holding in *Boston Gas*. Hopefully, future progressive claim defendants will work through these issues at the early stages of any claims or lawsuits.

### d. There are questions of fact which preclude summary judgment on the MacDowell suits.

Lukens argues that material questions of fact exist relative to whether either of the MacDowell decedents was even exposed to asbestos or an asbestos-containing product, or if they were exposed, whether that product was supplied by Lukens. Without such determination, then the allocation of each party's pro rata share as calculated by the insurance companies is premature and no declaration should issue. In order to establish an actionable exposure to an asbestos-containing product, a plaintiff must prove that he worked with the asbestos-containing product or that he regularly worked in close proximity to others using the asbestos-containing product. *See Welch v. Keene Corp.*, 31 Mass. App. Ct. 157, 161, 575 N.E.2d 766 (1991). Lukens claims that the only evidence that either of the MacDowells worked with, or regularly worked in close proximity to, others using a Lukens sold, supplied or distributed asbestos-containing product, are allegations contested in each MacDowell's Complaint and supporting documentation in the Middlesex County cases. Lukens directs the Court to Exhibit 75 in their "Statement of Material Facts Presenting a Genuine Issue for Trial" (Docket No. 71-32) which contains K. MacDowell's opposition to Lukens' Motion for Summary Judgment filed in the

13

Middlesex Superior Court and Exhibit 76 which is Lukens' Motion for Summary Judgment in the R. MacDowell case, also filed in Middlesex Superior Court.

Utica's calculations of the pro rata shares are based upon "actual allegations of the plaintiffs in the Underlying Suits as to exposure and manifestation, including the allegations in the underlying complaint, deposition testimony, and answers to interrogatories." They further argue that "Lukens has provided nothing to the Court to dispute the exposure and manifestation dates identified in Utica's motion" and that Lukens has submitted no contradicting evidence as required by Local Rule 56.1. That rule provides in pertinent part that:

> a party opposing the motion shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition.

D. Mass. R. 56.1. Lukens has complied Local Rule 56.1 and has filed a detailed summary of its efforts to defend the MacDowell suits in Middlesex Superior Court. Its filings establish that a genuine issue of material fact exists relative to when either, or both, MacDowells were exposed to asbestos and if they were, whether that exposure was to a Lukens sold, supplied, or distributed product. Accordingly, I hereby deny Plaintiffs'/Nominal Defendants' application for a declaration as to the pro rata share of each of the respective parties.[5]

### e.   Lukens' Chapter 93A Counterclaims.

Utica has moved for summary judgment on Lukens' counterclaims. Specifically, Lukens asserted counterclaims against Utica under Chapter 93A based on its conduct with respect to the Mastrogiacomo suit's settlement, its refusal to cede defense of the underlying cases to them and its failure to establish conflict screens between the claims handlers in the cases and the claims

---

[5] Because I am denying Plaintiffs'/Nominal Defendants' application for summary judgment for a declaration as to the pro rata share of the respective parties, I will not address Lukens' argument that Utica has failed to join indispensible parties.

handlers for this declaratory judgment action (Count I). Lukens brings a similar claim against Arrowood for its refusal to relinquish control of the litigation of the Underlying Cases (Count II). Although Count III alleges a redundant Chapter 93A violation against "Arrowood" for refusing to cede control of the defense to Lukens in the Underlying Cases and by settling the Mastrogiacomo suit without Lukens' consent, the Court assumes that Lukens intended to plead a "Violation of G.L. c. 93A v. Chartis" in accordance with that count's heading.

Since Utica's refusal to cede control of the litigation to Lukens' counsel of choice is common to all three counts in the counterclaim, I will deal with it first. To prevail on a claim of unfair or deceptive business practices, Lukens must show Utica engaged in "immoral, unethical, oppressive, or unscrupulous" tactics. *Bank of America, N.A. v. Prestige Imports, Inc.*, 75 Mass. App. Ct. 741, 770, 917 N.E.2d 207 (2009). An insurer's reasonable and good faith assertion of a legal position and the taking of active steps to resolve a dispute with its insured, do not constitute unfair or deceptive business practices, even if the insurer's position "ultimately [is] held to be based on a misinterpretation of the law." *Premier Ins. Co. of Mass. v. Furtado*, 428 Mass. 507, 510, 703 N.E.2d 208 (1998); *see also Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343, 631 N.E.2d 75 (1994) ("A plausible, reasoned legal position that may ultimately turn out to be mistaken–or simply, as here, unsuccessful–is outside the scope of the punitive aspects of the combined application c. 93A and c. 176D."); *Bos. Symphony Orchestra v. Commercial Union Ins. Co.*, 406 Mass. 7, 15, 545 N.E.2d 1156 (1989) ("In good faith, [the insurer] relied upon a plausible, although ultimately incorrect, interpretation of its policy. There is nothing immoral, unethical or oppressive in such an action.").

I agree with Utica that the law with respect to coverage of progressive injury cases was, and is, in a state of flux. As set forth above in Section C of this Part, I further agree that Utica's

refusal to cede "control" of its defense of the MacDowell suits did not trigger a corresponding obligation to indemnify Lukens for any judgment that it may eventually incur. Similarly, it was not bad faith to refuse to cede control of the defense of those cases and does not give rise to an actionable claim under Chapter 93A. I find for Utica on so much of Counts I, II and III of Lukens' counterclaims that so allege.

I am not of a similar mind with respect to the conduct of Utica, AIPIC and Granite State in the settlement of the Mastrogiacomo suit. Utica's conduct in waiting until three weeks before trial to inform Lukens that they were suddenly on the risk, that they were going to settle the case, that Lukens was expected to contribute their pro rata share to any settlement of judgment, and that they would not seek to have the case continued to provide Lukens an opportunity to evaluate these startling developments gives at least a rise to a material issue of fact. Accordingly, I deny Lukens' motion for summary judgment on so much of Count I versus Utica, Count III versus AIPIC and Granite State that allege a violation based upon the settlement of the Mastrogiacomo suit.

Finally, Utica moves for summary judgment on Count I of Lukens' counterclaim that alleges that Utica violated Chapter 93A by advancing its own interests over those of Lukens by failing to segregate information, documents and decision making concerning the underlying cases. Lukens, in its opposition, contends that they have not yet had the opportunity to conduct discovery on that issue. Lukens' Motion for Leave to File an Amended Answer to Assert Counterclaim was filed on November 1, 2011 (Docket No. 32) and granted by Judge Saylor on April 4, 2012. At the hearing on that motion, Judge Saylor suggested that discovery on the Chapter 93A claims should be stayed until after the disposition of the summary judgment motions. Thereafter, the parties could assess whether, or not, the Chapter 93A counterclaims had

survived, and if so, whether additional discovery was necessary. That suggestion, adopted by the parties during oral arguments, made sense then, and now. Accordingly, I hereby deny without prejudice to renew Utica's motion for summary judgment on so much of Count I that alleges a Chapter 93A violation by failing to segregate the underlying case from the coverage case.

### IV.  Conclusion

1.      It is hereby **DECLARED** and **ADJUDGED** that the alleged injuries in each of the MacDowell suits are progressive injuries such that the holding in *Boston Gas* applies.

2.      It is hereby **DECLARED** and **ADJUDGED** that the "continuous trigger" approach as defined in *Boston Gas* shall be used to calculate the time during which the progressive injuries in the MacDowell suits occurred.

3.      It is hereby **DECLARED** and **ADJUDGED** that Lukens shall not be required to pay a pro rata share of the settlement of the Mastrogiacomo suit.

I grant so much of the Motions for Summary Judgment as to Lukens' counterclaims that allege damages for Utica's failure to cede the defense of the underlying asbestos cases and deny it in all other respects. In all other respects the Motions for Summary Judgment are denied. This court will hold a status conference set for **June 17, 2013** at **11:00 AM**.


SO ORDERED.


/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**